N. W. PUGH COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48176.   Promulgated November 4, 1932.

*F. L. Pearce, Esq.,* for the petitioner.
*W. R. Lansford, Esq.,* for the respondent.

14

OPINION.

GOODRICH: Petitioner's claim is bottomed upon section 234 (a) (7) of the Revenue Act of 1926, and section 23 (k) of the Revenue Act

of 1928, which permit as a deduction from gross income " a reasonable allowance for the exhaustion * * * of property used in * * * business." It is not denied that the leases were used in business or that they were subject to exhaustion. The question here is whether there is a basis for exhaustion of these leases under section 204 (a) of the Revenue Act of 1926, which provides that such basis, for property acquired subsequent to March 1, 1913, shall be its cost. Petitioner contends that the cost of these leases, and therefore the basis for computing the deduction for their exhaustion over their remaining term of 54 months, is $49,740.93. Respondent contends that the leases have no cost basis, for the reason that they were acquired in the first instance by the Hancock company without cost, that they remained the property of that company, unaffected by the purchase of its capital stock, and that the transaction gave rise to no new basis whereby a revaluation of the company's assets was permissible for the purpose of computing exhaustion allowance for existing leases. In short, he contends that the intervening events were of no consequence.

We agree with respondent. It is apparent that petitioner desired and intended to purchase the leases, and that it agreed to purchase all of the assets of the Hancock company, except those specifically excepted, in order to accomplish its purpose. But it was discovered that one of the leases could not be transferred and that fact prevented consummation of the sale of assets. Possibly the consent of the lessor to a modification of the lease which would permit of its transfer might have been obtained, but it was not. Apparently, neither of the parties was aware of the restriction in the lease when the agreement for purchase and sale of the assets was made and, because of that mutual mistake respecting the possibility of making valid delivery of the assets, the first agreement was rescinded and a new contract made covering the purchase and sale of the capital stock of the Hancock company. That second agreement was carried out and the transaction before us is plainly a purchase by the old Pugh company of all the capital stock of the Hancock company, which gives rise to no new basis for the leaseholds owned by the latter corporation.

It appears also that, immediately upon obtaining the first agreement, the old Pugh company took possession of the merchandise of the Hancock company, and of the store premises, and dealt with them as if they were its own. These activities continued after the transaction was changed to one of purchase and sale of capital stock and included the disposal of part of the Hancock merchandise upon sale and intermingling it with the stock of the Pugh company. This, petitioner contends, constituted a liquidation of the Hancock

company to its sole stockholder, thus establishing as the cost basis for the assets received the cost of the capital stock. That argument must fall because the restriction which prevented the consummation of the first agreement, namely, the nontransferability of the lease, likewise prevented a complete distribution of the assets of the Hancock company.

Finally, petitioner urges that the recapitalization and change of name of the Hancock company effected a reorganization; that the transfer of its assets and the dissolution of the old Pugh company effected a merger; and that, as a consequence, a new basis was established for the assets in the hands of the new Pugh company, this petitioner. In other words, it contends that the sum paid for the capital stock in excess of the book value of the Hancock assets was paid for the leases, and in the merger carried over as the cost basis of the leases. Assuming that a reorganization and merger were accomplished, it does not follow that the basis for the leases was thereby changed. Ownership of the leases did not change, it remained in the Hancock company and was unaffected when, by change of name and recapitalization, that company was reorganized to become this petitioner. The assets of the old Pugh company, on the other hand, were brought into petitioner in the merger, presumably in consideration of the exchange of petitioner's stock for the stock of the old Pugh company. Doubtless, these additional assets increased the value of petitioner's stock, but the stockholders are not before us. There was no additional cost to petitioner of the assets, including the leases, which it theretofore owned, whether under the old name or the new, nor was their value increased, and, as we are not concerned with the cost or value of the assets of the old Pugh company, we see no reason upon which to bottom a finding that the merger effected a change in basis of the Hancock leases or other assets.

*Judgment will be entered for the respondent.*